# EXHIBIT A

**Complaint**,

Filed in Eighth Judicial District Court

Case No. A-20-812910-C

Electronically Filed
3/27/2020 10:16 AM
Steven D. Grierson
CLERK OF THE COURT

**COM**
**HOFLAND & TOMSHECK**
Joshua Tomsheck, Esq.
State Bar of Nevada No. 009210
josht@hoflandlaw.com
228 South 4th Street, 1st Floor
Las Vegas, Nevada 89101
(702) 895-6760
(702) 731-6910 facsimile
*Attorney for Plaintiff*

CASE NO: A-20-812910-C
Department 32

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| BENJAMIN SPARKS, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTINA MAMER, an individual;<br>RAMONA GIWARGIS, an individual;<br>and<br>DOES I through X, inclusive,<br>ROES I through X, inclusive<br><br>Defendants. | CASE NO.:<br>DEPT NO.:<br><br><br><br>**COMPLAINT** |

Plaintiff Benjamin Sparks, by and through his undersigned counsel, Josh Tomsheck, Esq., of the Law Firm of Hofland & Tomsheck, hereby complain and allege as follows:

**PARTIES AND JURISDICTION**

1.  At all times mentioned Plaintiff, Benjamin Sparks, (hereinafter referred to as "Plaintiff"), was and is over the age of eighteen (18) years old, was a resident of Clark County Nevada.

2.  Plaintiff is informed and believes and thereon alleges that at all times relevant hereto, Defendant, Christina Mamer, (hereinafter referred to as "Defendant Mamer"), was and is over the age of eighteen (18) years old, was and is a resident of Clark County, Nevada.

3. Plaintiff is informed and believes and thereon alleges that all times relevant hereto, Defendant, Ramona Giwargis, (hereinafter referred to as "Defendant Giwargis"),

1  was and is over the age of eighteen (18) years old, and was a resident of Clark County, Nevada.

2  4. The true names of DOES I through X, their citizenship and capacities, whether individual, corporate associate, partnership or otherwise, are unknown to Plaintiff who therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe, and thereupon allege, that each of the Defendants designated herein as DOES are responsible in some manner for the events and happenings herein referred to, and in some manner caused the injuries and damages proximately thereby to the Plaintiff, as herein alleged.

5. The true names, identities or capacities, whether individual, corporate, associate or otherwise of the Defendants, Does I through X, are unknown to the Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believe, and thereupon allege, that each of the Defendants designated herein as Doe and Roe Corporations are responsible in some manner for the events and happenings herein referred to; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Defendants Does I through X when the same have been ascertained by Plaintiff, together with appropriate charging allegations, and to join Defendants in this action.

6. DOES 1 through 10 are persons whose conduct gives rise to this Complaint; specifically, these DOE individuals are individuals who participated in the conduct alleged herein. The Plaintiff reserves the right to amend this Complaint to specifically name these individuals when their identities are ascertained.

7. ROES 1 through 10 are business entities whose conduct gives rise to the allegations of the Complaint contained herein; specifically, these ROE business entities participated in the conduct alleged herein. The Plaintiffs reserve the right to amend this Complaint to specifically name these individuals when their identifies are ascertained.

8. Plaintiffs are further informed and believe, and on that basis alleges that certain witnesses are known to Plaintiff as witnesses. However, Plaintiff does not yet know whether or not particular witnesses have culpability in this matter at this time. However, once Plaintiff has determined the true culpability of one or more of the DOE Defendants, they will amend the complaint to set forth facts and claims alleging the actual culpability and to substitute such witnesses for DOE Defendants.

9. Plaintiff alleges that the activities described in this Complaint are performed by each named or unnamed Defendant, either individually or in concert with the others, or with the knowledge, encouragement or direction of one or more of the other named or unnamed Defendants, and therefore those Defendants are jointly, separately liable, and vicariously liable for the injuries and causes of action further described in this Complaint.

**GENERAL ALLEGATIONS**

10. Plaintiffs repeat and re-allege Paragraphs 1 through 9 of the Complaint as though fully set forth herein and further complains and alleges as follows:

11. On or about March 29, 2018, Plaintiff contacted the Las Vegas Metropolitan police department's emergency 911 system for a welfare check on Defendant Mamer, who was threatening to harm herself.

12. Thereafter, Defendant Mamer herself contacted the Las Vegas Metropolitan Police Department to falsely report criminal allegations against Plaintiff, alleging these incidents occurred at 5175 South Jerry Tarkanian Way, Las Vegas, Clark County, Nevada.

13. Defendant Mamer falsely and maliciously represented to the police that she had been injured by Plaintiff.

14. Plaintiff and Defendant Mamer had just ended an intimate relationship.

15. An arrest warrant was issued for Plaintiff based on Defendant Mamer's statements to police officers.

16. That same day, Defendant Mamer, portraying and holding herself out to be a different individual, e-mailed Plaintiff's boss an alleged "sex contract" purported to be between Defendant Mamer and Plaintiff.

17. Defendant Mamer, again portraying and holding herself out to be a different individual, provided written reports to various news outlets, which contained false and defamatory accusations against Plaintiff.

18. On, or about, March 28, 2018, Defendant Giwargis wrote an article, which was then published in the Las Vegas Review Journal, stating, among other things, that Plaintiff had been fired following a domestic dispute, and amid a domestic violence investigation.

19. On, or about, April 4, 2018, Defendant Giwargis wrote an article, which was then published in the Las Vegas Review Journal, stating that as fact that that Plaintiff sexually enslaved and battered Defendant Mamer.

20. This article stated Defendant Mamer (without providing her name) provided Defendant Giwargis copies of e-mails, text messages, and a signed contract laying out her duties as a "slave in training" to Plaintiff.

21. This article stated Plaintiff and Defendant Mamer signed a five-page contract stating that Defendant Mamer would be his "slave and property."

22. This article stated Defendant Mamer was forced to kneel and look down when she entered his presence, be nude at all times, have sexual relations with Plaintiff whenever he wanted, and wear a collar in writing.

23. In this article, Defendant Mamer told Defendant Giwargis that Plaintiff was very demanding, did not take no for an answer, and forced himself on her.

24. This article states that Plaintiff asked Defendant Mamer to be bound and blindfolded and have sex with other men in front of him.

25. This article stated that Plaintiff would not let Defendant Mamer leave the house for two hours.

26. This article stated that Defendant Mamer lost a fingernail and had a bruise on her left thumb.

27. On April 6, 2018, Defendant Giwargis wrote an article, published in the Las Vegas Review Journal, stating that Plaintiff had Defendant Mamer sign a contract to become his "slave and property."

28. This article alleged that the contract required Defendant Mamer to kneel and look down when she entered his presence, be nude at all times, have sexual relations with Plaintiff whenever he wanted and wear a collar in private.

29. This article alleged that Plaintiff asked Defendant Mamer to be tied up and have sex with other men while Plaintiff watched.

30. This article alleged that Plaintiff physically blocked Defendant Mamer from leaving the residence for two hours.

31. This article alleged that Defendant Mamer suffered injures to her thumb and lost a fingernail.

32. On May 6, 2018, Defendant Giwaris wrote an additional article, again published in the Las Vegas Review Journal, about Plaintiff.

33. In this article, Defendant Mamer accused Plaintiff of giving her permanent vision impairment.

34. In this article, Plaintiff is accused of hitting Defendant Mamer near her right eye socket with a partially closed fist.

35. Defendant Mamer stated she suffered a permanent retinal tear.

36. On May 8, 2018, Defendant Giwargis wrote an additional article, again published in the Las Vegas Review Journal, about Plaintiff.

37. This article alleged Defendant Mamer filed a supplemental police report documenting a permanent eye injury that Defendant Mamer claimed happened with Plaintiff hit her during sex.

38. This article alleged that Plaintiff would be charged with a felony offense.

39. As a result of these untrue alleagations made by Defendant Mamer and published by Defendant Giwargis, which were levied against Plaintiff, criminal charges were filed against Plaintiff by the State of Nevada.

40. Defendant Mamer, knowing her allegations to be untrue, did not avail herself to testify before the Criminal Court and subject herself to cross-examination, which would have exonerated Plaintiff from these serious allegations.

41. As a result of Defendant Mamer's decision not to avail herself to the criminal court process, the false criminal charges against Plaintiff were dismissed.

42. As a result of the defamatory statements and publication, Plaintiff suffered financial damages and emotional damages in the amount of excess of $15,000.00.

### FIRST CLAIM FOR RELIEF
### DEFAMATION AND DEFAMATION PER SE
**(Against all Defendants)**

43. Plaintiff repeat and re-allege Paragraphs 1 through 42 of the Complaint as though fully set forth herein and further complains and alleges as follows:

44. Plaintiff enjoyed a good reputation and a good career as a political consult and campaign advisor.

45. Defendant Mamer, through her statements to Las Vegas Metropolitan Police Department officers and the Las Vegas Review Journal, knowingly stated defamatory statements, amounting to libel/slander, based on specific facts about Plaintiff, including but not limited to:

    a. Plaintiff required Defendant Mamer to sign a sex contract;

    b. Plaintiff required Defendant Mamer to abide by that sex contract;

    c. Plaintiff kidnapped Defendant Mamer;

    d. Plaintiff grabbed Defendant Mamer's hand and pinned her to the bed frame, thereby tearing off a fingernail and/or a portion of a fingernail, that resulted in substantial bodily harm.

    e. Plaintiff punched Defendant Mamer on or about the face and/or head, resulting in substantial bodily harm.

    f.  Plaintiff intimidated Defendant Mamer by threatening to release the sex contract if Defendant Mamer did not continue the relationship.

    g.  Plaintiff's goal was to embarrass or bring disrepute to Defendant Mamer.

46. Defendant Mamer's statements were entirely false and not protected by any privilege.

47. Defendant Mamer made these statements knowingly and maliciously with the goal of harming the hard-earned reputation of Plaintiff.

48. Defendant Giwargis knowingly wrote and published defamatory statements, amounting to libel/slander based on specific facts about Plaintiff, including but not limited to:

    a.  Plaintiff physically blocked Defendant Mamer from leaving their shared residence.

    b.  Plaintiff required Defendant Mamer to sign a contract to become his "slave and property."

    c.  Defendant Mamer suffered injuries to her thumb and lost a finger nail because of Plaintiff.

    d.  Plaintiff required Defendant Mamer to kneel and look down when she entered his presence, be nude at all times, have sexual relations with him whenever he wanted, and wear a collar in private.

    e.  Plaintiff wanted Defendant Mamer to be tied up and blindfolded and to have sex with other men in front of him.

    f.  Plaintiff hit Defendant Mamer in her right eye socket with a partially closed fist.

    g.  Plaintiff's actions gave Defendant Mamer permanent vision impairment.

    h.  Plaintiff's actions caused Defendant Mamer to have a permanent retinal tear.

49. Defendant Giwargis statements were entirely false and not protected by any privilege.

50. Defendant Giwargis published these statements knowingly and maliciously with the goal of harming the hard-earned reputation of plaintiff.

51. Defendant Giwargis and Defendant Review Journal's statements constitute libel because they are written.

52. As a direct and proximate result of Defendants' conduct, Plaintiff's reputation was damaged.

53. As a direct and proximate result of Defendants' conduct, Plaintiff was fired from his job in Las Vegas, Nevada.

54. As a direct and proximate result of Defendants' conduct, Plaintiff had to move across the country.

55. As a direct and proximate result of Defendants' conduct, this "sex contract" story made national news, being re-published on "Vox.com," "Heavy.com," and by the Associated Press and New York Post.

56. As a direct and proximate result of Defendants' conduct, Plaintiff sustained damages, including but not limited to erosion of business reputation and client base, in excess of $15,000.00, the exact amount to be determined at trial.

57. Damages are presumed because Defendants' conduct constitutes defamation per se, slander, and libel, and done with the intent to harm and oppress Plaintiff, thus warranting punitive damages under NRS 42.005 and attorney fees under NRS 18.010

58. Additionally, Plaintiff has suffered damages in the form of attorney fees, as it has been necessary for Plaintiff to retain the services of counsel to represent him in this action and the underlying criminal action, and they should be awarded reasonable attorney fees and costs.

///
///

## *SECOND CLAIM FOR RELIEF*
## **FALSE LIGHT**
### (Against all Defendants)

59. Plaintiffs repeat and re-allege Paragraphs 1 through 58 of the Complaint as though fully set forth herein and further complains and alleges as follows:

60. Defendants' actions constitute false light, a sub-claim of invasion of privacy.

61. Defendants' defamatory statements placed Plaintiff before the public in a false light.

62. Defendants' defamatory statements are highly offensive and objectionable to the reasonable person, and were in fact offensive and objectionable to Plaintiff.

63. Defendants made these statements knowingly and maliciously with the goal of harming the hard-earned reputation of Plaintiff.

64. As a direct and proximate result of Defendants' conduct, Plaintiff sustained damages, including but not limited to erosion of business reputation and client base, in excess of $15,000.00, the exact amount to be determined at trial.

65. Defendants' conduct was willful, malicious, and done with the intent to harm and oppress Plaintiff, thus warranting punitive damages under NRS 42.005 and attorney fees under NRS 608.140.

66. Additionally, Plaintiff has suffered damages in the form of attorney fees, as it has been necessary for Plaintiff to retain the services of counsel to represent him in this action, and the underlying criminal action, and he should be awarded reasonable attorney fees and costs.

## *THIRD CLAIM FOR RELIEF*
## **INJUNCTIVE RELIEF**
### (Against All Defendants)

67. Plaintiffs repeat and re-allege Paragraphs 1 through 66 of the Complaint as though fully set forth herein and further complains and alleges as follows:

68. Plaintiffs seek a preliminary injunction ordering the Las Vegas Review Journal remove the false and defamatory statements from the Las Vegas Review Journal Website and other social media websites during the pendency of this lawsuit.

69. Following a determination that Defendants' statements are false and defamatory, the Plaintiff requests that the Court enter a final and permanent injunction ordering the Las Vegas Review Journal to permanently remove the offending articles and enjoining them from republishing those or any similar defamatory statements.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For a sum to be determined for past and future pain and suffering;
2. For a sum to be determined for past and future lost wages;
3. For special damages in a sum in excess of $15,000.00;
4. For general damages in a sum in excess of $15,000.00;
5. For a sum to be determined at trial for punitive damages;
6. For reasonable attorney's fees, costs, and interest for having to prosecute this Matter;
7. For reasonable attorney's fees, costs, and interest for having to hire an attorney to defend the underlying criminal matter;
8. For pre and post-judgment interest;

///
///
///
///
///
///
///
///
///

9. Granting injunctive relief as requested herein; and

10. For such and further relief as this Court may deem just and equitable in the premises.

DATED this 27th day of March, 2020.

**HOFLAND & TOMSHECK**

By**:**_____***/s/ J. Tomsheck***_____
       Joshua Tomsheck, Esq.
       State Bar of Nevada No.:  009210
       Josht@hoflandlaw.com
       228 South Fourth Street, 1st Floor
       Las Vegas, Nevada 89101
       Telephone:  (702) 895-6760
       Attorney for Plaintiff