JAMES E. WHITMIRE, ESQ.
Nevada Bar No. 6533
jwhitmire@santoronevada.com
SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
Telephone:    702/948-8771
Facsimile:    702/948-8773
*Attorneys for Defendant Christina Mamer*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| BENJAMIN SPARKS, an individual; | Case No.:   2:20-cv-00661 |
| Plaintiffs, | **DEFENDANT CHRISTINA MAMER'S REPLY TO PLAINTIFF'S RESPONSE TO SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660** |
| vs. | |
| CHRISTINA MAMER, an individual; and RAMONA GIWARGIS, an individual, | |
| Defendants. | |

CHRISTINA MAMER ("Defendant" or "Christina"), by and through her counsel of record, hereby files Defendant Christina Mamer's Reply to Plaintiff's Response to Special Motion to Dismiss Pursuant to NRS 41.660.  This Reply is made and based on the Points and Authorities set forth below, the Declaration and/or Exhibits submitted herewith and any oral argument before the Court.

## MEMORANDUM OF POINTS & AUTHORITIES

### I.    INTRODUCTION

Plaintiff's Response to the Special Motion to Dismiss actually illustrates why Defendant Christina Mamer's Special Motion to Dismiss is particularly appropriate to extricate herself from Plaintiff's retaliatory, vindictive and meritless lawsuit.  After conceding, as he must, that there was in fact a "sex-contract" that he drafted, Mr. Sparks has doubled down on his efforts to control, punish, embarrass and/or otherwise humiliate Christina by filing a Response that goes

1   far afield of the allegations of the lawsuit that he filed and for which Christina is forced to

2   defend.  Rather than focusing on the allegations of his own lawsuit, Mr. Sparks devotes the lions'

3   share of his Response to lashing out at Christina with a broad swath of false and legally

4   irrelevant details concerning Christina.

5        Simply put, this is a case that needs to be promptly put to a conclusion before further

6   harm occurs.  Indeed, this is a case for which the anti-SLAPP statute that was enacted whereby a

7   summary-judgment-like proceeding occurs to allow the Court to vet the issues at an early

8   juncture of the case.  Mr. Sparks fundamentally misapprehends the procedural posture of this

9   case and the fact that Christina's Motion is not premature under the anti-SLAPP statute (nor

10  must she file a separate Rule 12 or Rule 56 Motion).

11       Christina should prevail on the first prong of the anti-SLAPP analysis given that the

12  allegations of the Complaint are anti-SLAPP protected on a number of levels; namely, the matter

13  involves protected communications to law enforcement officials, protected communications

14  involving legal proceedings, protected communications involving matters of public

15  concern/domestic violence, and matters involving a public figure (Mr. Sparks).  As discussed in

16  the Motion and this Reply, there should be no question that Christina satisfies the first prong of

17  the anti-SLAPP analysis.

18       With respect to the second prong of the anti-SLAPP analysis, Plaintiff does not even

19  come close to satisfying his burden to demonstrate that he has a probability of prevailing on his

20  claim.[1]  Plaintiff's Response admits key facts.  Aside from his admissions, Plaintiff's Response

21

22

23

24

---

[1]  Under established Ninth Circuit case law,  summary judgment in favor of Defendant Mamer would be appropriate as a result of Plaintiff's failure to support his Response with competent any evidence.  Moreover, in the anti-SLAPP context, a plaintiff is not allowed to rely on pleadings alone.  See, e.g, Wong v. Tai-Jing, 189 Cal. App. 4th 1354, 1368 (Cal. Ct. App.  2010).

- 2 -

avoids many arguments made by Christina.  Moreover, the Response is unsupported with <u>any</u>

Declarations or competent evidence to support his position.

## II.     PLAINTIFF'S RESPONSE IS SIGNIFICANT FOR WHAT <u>IT ADMITS AND/OR DOES NOT SAY, DISPUTE OR CONTAIN</u>

Before discussing the two prongs of the anti-SLAPP analysis, Christina will highlight, in

bullet point fashion, various fundamental aspects of Plaintiff's Response which should be kept in

mind throughout the entirety of the Court's analysis of this matter.

- As separately briefed, there was nothing improper with Christina's removal of this action to Federal Court.  She did not need to wait for the issuance of a summons and actual service of Plaintiff's Complaint to seek redress in this matter, especially under the unique circumstances in this matter.

- There is nothing premature about the Special Motion to Dismiss.  Plaintiff is correct at footnote 2 of his Response that Christina is asking the Court to treat this in summary judgment like fashion, which she has every right to do under the law.

- Plaintiff does not dispute the existence of a "sex-contract."  He now admits that a "sex-contract" does exist.

- Plaintiff does not dispute that he generated the "sex-contract."  He now admits to this fact.

- Plaintiff does not dispute that the fully executed "sex-contract" Christina submitted as Exhibit A-6 is a true and correct copy of the document the parties executed.

- Plaintiff's Response conspicuously omits any Declaration from Mr. Sparks testifying to any issue under penalty of perjury.

- Plaintiff's Response conspicuously omits exhibits or other materials to support the gratuitous innuendos and false accusations in footnotes and other places of the Response that are intended to harm Christina and even if true, have no relevance to Plaintiff's Complaint.

- Plaintiff's Response completely ignores competent evidence, presented by Christina, in the form of various exhibits to prove her points.

- Plaintiff's Response does not dispute video footage of Plaintiff angrily charging towards Christina with his phone in his hand attempting to prevent her from escaping their residence on the final day a mere seven (7) minutes before he

reported to the police that Christina "had taken a handful of pills, locked herself in her room and would not open the door." See Exhibit A-8 at DEFM-000036.[2]

- Plaintiff's Response ignores that the arriving officers noted that Christina did not have **any** signs of being intoxicated or under the influence of narcotics. See Exhibit A-7 at DEFM-000034.

- Plaintiff's Response ignores that the officers noted visible injuries caused by Plaintiff and found there was probable cause to arrest Plaintiff for domestic violence. See Exhibit A-7 at DEFM-000034.

- Nowhere does Plaintiff dispute that on March 29, 2018, the Plaintiff caused injury to both Defendant's right middle fingernail and left thumb. Id. and See Defendant's Declaration at ¶32-34. Those injuries were readily apparent and visible to the arriving officers, as noted in the March 29, 2018 Police Report. Id.

- Nowhere does Plaintiff dispute the March 29, 2018 Police Report stating, "She [Defendant] [tried to] leave the apartment for the next 2 hours but Sparks would not let her go."

- Plaintiff admits to a prior injury to Christina's fingernail, yet attempts to excuse the matter, without a sworn statement, on a snag on a bedsheet.

- Plaintiff's Response completely avoids, and does not dispute with sworn testimony, the issue of Christina's injuries to her head/eye resulting in substantial bodily harm. More particularly, the Indictment attached to the Special Motion as Ex. A-17 states that Plaintiff "did on or about March 2, 2018, willfully and unlawfully use force or violence against ….C.M. [Defendant] by punching the said C.M. [Defendant] on or about the face and/or head resulting in substantial bodily harm." Christina suffered a retinal tear and has the medical records to prove it in addition to her own testimony.

- Plaintiff's Response fails to dispute the proposition, with sworn evidence or otherwise, that he threatened to release the sex contract if Christina did not continue the relationships. To be sure, Plaintiff makes this unsubstantiated accusation as to Christina, but he never denies that he made those threats to Christina.

- Nowhere does Plaintiff dispute that he is a public figure.

---

[2] Notably, Plaintiff's Response actually tries to mislead the Court by inferring that Plaintiff was not in the parties' residence when he called 9-1-1 to report that Plaintiff was allegedly suicidal. His Response states, "Plaintiff left the residence where was residing with Ms. Mamer and never returned. Plaintiff contacted the police as he was worried that Defendant Mamer would kill herself." See, Response at 4:20-23. In actuality, the surveillance video is consistent with Christina's account that he was in the residence, and after preventing her from leaving, he falsely reported that Mamer was suicidal as he was leaving the scene to avoid arrest.

- Plaintiff acknowledges that statements that form the basis of his Complaint stemmed from a protected context (i.e. statements to the police, statements made in judicial proceedings, including grand jury testimony).

### III.   DEFENDANT'S SPECIAL MOTION TO DISMISS SHOULD BE GRANTED ON MULTIPLE INDEPENDENT GROUNDS

This Section of the Reply is intended to respond to the Reply and refocus the Court's attention on the two factors of the anti-SLAPP analysis.  First, Plaintiff's claims are based on communications that fall within the anti-SLAPP statute's coverage that were truthfully made and/or made without knowledge of falsehood.  Second, Plaintiff's Response completely fails to show with prima facie evidence a probability of prevailing on his claims in summary-judgment-like fashion.

### A.   Christina Satisfies the First Prong of the Anti-SLAPP Analysis.

Other than saying Christina is a liar without any competent proof, Plaintiff waits until page 13 of his Response to claim "[t]his case is not an Anti-SLAPP case" with a one page discussion relating thereto with virtually no citation to case law.  Fundamentally, Christina satisfied the first prong of the anti-SLAPP burden shifting framework by attaching a detailed sworn declaration with supporting proof as to the truth and/or lack of knowledge of falsity of the subject matter of Plaintiff's lawsuit.[3]

In addition to providing sufficient proof of the truth or lack of falsity to engage the burden shifting, both the opening Motion and this Reply provides the Court with ample case law to show that the law recognizes the protected anti-SLAPP nature of the communications at issue in this case.  On the other hand, Plaintiff's Response that has no case law to show any un-

---

[3]  Attached hereto as Ex. A is a short Declaration from Christina that further responds to matters raised in Plaintiff's Response that are tied to the Complaint as opposed to the gratuitous far-sweeping irrelevant claims made by Plaintiff as to Christina.

protected nature of communications.  To enhance the record, Christina provides the additional

discussion of case law that further supports her position.

### 1. Christina's Statements to the Grand Jury Fall Within the Purview of NRS 41.637(3) and are Absolutely Privileged.

Plaintiff's Complaint as it pertains to Christina alleges that she defamed him through her

statements to Las Vegas Metropolitan Police Department officers ("Metro") and the Las Vegas

Review Journal ("Review Journal").[4]  While Plaintiff's Complaint alleged that Christina made

statements to Metro and the Review Journal that Plaintiff "kidnapped" her, tore off a fingernail

that resulted in "substantial bodily harm," and punched "her on or about the face and/or head

resulting in substantial bodily harm," Plaintiff's Response does yet another about-face.

More specifically, Christina's Special Motion to Dismiss set forth undisputable evidence

that those statements were not made to Metro or the Review Journal.  Instead, the allegations in

Plaintiff's Complaint, including at times the exact verbatim language in Plaintiff's Complaint,

originated from the transcript of Christina's compelled testimony before the Clark County Grand

Jury in December 2018, and/or the Indictment filed by the Clark County District Attorney's

Office in the Eighth Judicial District Court, State of Nevada in January 2019.

To Plaintiff's credit, after being caught misrepresenting the source of the information in

his Complaint, he concedes in his Response that a significant portion of the allegations in his

Complaint that he claims are defamatory actually only exist in the transcript of Christina's

compelled Grand Jury testimony, or the Indictment filed by the Clark County District Attorney's

Office in the Eighth Judicial District Court, State of Nevada, in January 2019.  Rather than

taking the next step of conceding that Grand Jury testimony and/or the Indictment filed by the

District Attorney's office is smack-dab within the purview of NRS 41.637(3), Plaintiff attempts

---

[4] See, Plaintiff's Complaint [ECF No. 1] at 6:15-7:4.

1    to argue that a grand jury proceeding is a quasi-judicial proceeding, without offering any

2    admissible evidence or case law to support this ridiculous proposition.

3          The powers and duties of grand juries are set forth in Chapter 172 of the Nevada Revised

4    Statutes.   In fact, NRS 172.105 makes it clear that a grand jury may inquire into all public

5    offenses triable in the district court or in a Justice Court, committed within the territorial

6    jurisdiction of the district court for which it is impaneled.   As such, a grand jury proceeding is

7    clearly a proceeding under NRS 41.637(3).

8          Next, Plaintiff argues, again with conclusory allegations not supported by any admissible

9    evidence, that Christina "lied under oath in front of the Grand Jury."   Christina's declaration in

10   support of her special Motion to Dismiss clearly sets forth that her testimony before the Grand

11   Jury was true and correct to the best of her knowledge, and that Christina did not make any

12   statements with the knowledge of their falsity. Once Christina has established by a

13   preponderance of the evidence that Plaintiff's claims arise from conduct covered by NRS

14   41.660, the burden shifts to Plaintiff to demonstrate with prima facie evidence that there is a

15   probability of prevailing on the claim.

16         Here, in addition to Christina's declaration, she also submitted surveillance video footage

17   of Plaintiff angrily charging towards Christina with his phone in his hand attempting to prevent

18   her from escaping their residence on the final day a mere seven (7) minutes before he reported to

19   the police that Christina "had taken a handful of pills, locked herself in her room and would not

20   open the door." See Exhibit A-8 at DEFM-000036.   Plaintiff did not dispute the surveillance

21   video in his Response.   Moreover, while Plaintiff's response attempts to explain away an injury

22   to Christina's nail as simply her losing an artificial fingernail by snagging it on a bed sheet, the

23   grand jury testimony clearly sets forth that was not the case.   Instead, Plaintiff not only caused

24

Christina's artificial nail to come off, he ripped her natural nail off completely down to the nailbed below the cuticle.[5]   Finally, Plaintiff claims, again without admissible evidence, that Christina's testimony to the Grand Jury regarding the permanent injury Plaintiff inflicted on her eye was false because it was pre-existing condition.  Christina has no knowledge of ever being treated for any condition akin to a retinal tear at any time during her adult life.

Furthermore, Plaintiff did not submit any admissible evidence. Instead, Plaintiff submitted thirteen pages (13) of conclusory allegations, without evidentiary support, and then tries to rely on the allegations in his Complaint to demonstrate that he has a probability of prevailing on the claim, which is not permissible.  Woong v. TaiJing, 189 Cal. App. 4th 1354, 1368 (2010).   This is likely due to the fact that Plaintiff knew that a trial witness has absolute immunity with respect to any claim based on the witness' testimony.  Rehberg v. Paulk, 132 S. Ct. 1497, 182 L. Ed. 2d 593 (2012). Grand jury witnesses also enjoy the same immunity as witnesses at trial; this means that a grand jury witness has absolute immunity based on the witness' testimony.

**2.     Any Statements Christina Mamer to the District Attorney's Office During their Investigation Fall Under NRS 41.637(3) and are Absolutely Privileged.[6]**

As outlined above, Plaintiff's Complaint alleges that Christina defamed him through her statements to Las Vegas Las Vegas Metropolitan Police Department officers ("Metro") and the Las Vegas Review Journal ("Review Journal").   However, when faced with undisputable

---

[5] See Exhibit A-2 and A-3 (explanation of benefits and an emergency room photo taken after the surgical removal of her nail bed).

[6]   On April 9, 2018 – ten (10) days after the parties' relationship terminated – the District Attorney notified Christina that a criminal complaint had been filed against Plaintiff in the Clark County Justice Court.  See, Declaration of Mamer at ¶7 (Ex. A) and (Ex. A-1). This contradicts Plaintiff's unsupported allegation in his Response that any conversations with the District Attorney's Office between April, 2018 and January, 2019 were unprotected because no legal proceedings had been initiated.

evidence that in actuality, a large portion of Plaintiff's Complaint relies on alleged defamatory statements from the transcript of Christina's compelled testimony before the Clark County Grand Jury in December 2018, and/or the Indictment filed by the Clark County District Attorney's Office in the Eighth Judicial District Court, State of Nevada in January 2019, Plaintiff's has another about-face moment in his Response.

Plaintiff's sealed Response, at pages 9 and 10 allege that Christina had "non[-]judicial" and "non[-]law enforcement" communications with representatives of the Clark County District Attorney's office in which she falsely accused Plaintiff of criminal activity.  First and foremost, Plaintiff's Complaint is devoid of any such allegations.  Christina has to guess what Plaintiff even means by such allegations.  Is Plaintiff alleging that if she met with a Deputy District Attorney at the District Attorney's offices, to prepare for her grand jury testimony, such conduct would be "non-judicial" or "non-law enforcement," or is he alleging, without a factual basis, that Christina defamed Plaintiff to a representative from the District Attorney's office in a social setting?

Second, Plaintiff's Response contains no admissible evidence that such alleged conversations actually took place, who was present at the discussions, or what was allegedly said.  Instead, as with all of Plaintiff's Response, he relies on conclusory allegations that Christina is a liar so she must have had a conversation with the District Attorney and lied to him too.

Presuming that Plaintiff is alleging that Christina met with representatives of the District Attorney's office in an official capacity following Plaintiff being charged with domestic violence, Plaintiff cites to no case law to dispute that such communications would fall under NRS 41.637(3).  In fact, to the contrary, courts have consistently held that a defendant's

reporting of suspected criminal activity to law enforcement (police or district attorney) is within the ambit of the anti-SLAPP statutes (i.e. written or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law).  Banerjee v. Cont'l Inc., Inc., No. 2:17-CV-00466-APG-GWF, 2018 U.S. Dist. LEXIS 17387, at *5-7 (D. Nev. Feb. 1, 2018) (Judge Gordon, in a comprehensive decision granting an anti-SLAPP motion to dismiss noting, "[r]eports to police regarding possible criminal activity fall within the anti-SLAPP statute's coverage.  Nev. Rev. Stat. § 41.637(3)" (citing Lawrence v. Krahne, No. 66595, 2015 WL 5545555, at *1 (Nev. Ct. App. Sept. 16, 2015) (good faith statements to law enforcement about alleged threats were protected activity) (unpublished).

### 3.      Domestic Violence is an Issue of Public Interest.

Plaintiff argues in his Complaint that Christina falsely represented to the Review Journal that the parties entered into a sex contract, that Plaintiff drafted, and therefore, the Review Journal's publication of purported written terms of the sex contract was defamation because Christina lied about the existence of the contract.  As outlined above, while Plaintiff initially alleged Christina made up the existence of the sex contract, Plaintiff's allegations are very much a moving target.  When faced with Christina's disclosure of the parties' fully executed sex contract, Plaintiff admitted in his Response that he did in fact download and disseminate the contract to Christina, and does not dispute that the sex contract Christina produced contained the provisions cited in the Review Journal articles.  The remainder of allegations in the Review Journal articles came directly from Metro's official reports.

Here, Plaintiff offers no admissible evidence or case law to support his allegation that Christina's alleged statements to the Review Journal were not a matter of public interest because

they concerned domestic violence.  Additionally, Plaintiff concedes he is a public figure.  Simply put, the articles Plaintiff alleges contained defamatory statements, to which he does not challenge the authenticity, best support Plaintiff is in fact a public figure and that the issue involved a matter of public interest.[7]

In addition to the case law cited in Christina's special Motion to Dismiss, California courts have repeatedly held that "[d]omestic violence is an extremely important issue in our society," and public statements concerning alleged instances of domestic violence  - especially accusations involving public figures – are protected."[8]  Raymondo McDonald v. Kelley Wolff, Case No. 1:15-CV-278108 (Super. Ct. Cal., County of Santa Clara, June 4, 2016).  Accord, McGarry v. University of San Diego, 154 Cal. App. 4th 97, 109-110 (Cal. Ct. App. 2007).  All of the Review Journal articles that Plaintiff complains of relate directly to domestic violence investigated by Metro and are protected.

**B.      Plaintiff's Response Fails to Satisfy the Second Prong of the Anti-SLAPP Analysis.**

Plaintiff's Response does not even come close to satisfying his burden, with competent evidence, to demonstrate that he has a probability of prevailing on his claim.   Plaintiff's Response admits key facts as noted above.  Plaintiff's Response carefully avoids certain issues.  Moreover, Plaintiff's Response is unsupported with any Declarations or competent evidence to

---

[7] See ECF No. 9 at Exhibits A-9 at DEFM-000038 "Member of Crescent Hardy's campaign fired after alleged domestic dispute"; Plaintiff is a "skilled operative" DEFM-000039; Plaintiff served as a "spokesman and high-level staffer on a number of national campaigns, including Mitt Romney's 2012 presidential campaign and the anti-recall campaign of Wisconsin Gov. Scott Walker in 2012 DEFM-000043.

[8]  A copy of the McDonald decision is attached hereto as Exhibit B given that such decision is unavailable on Westlaw or LexisNexis to the best of the undersigned's knowledge.  ***The McDonald decision is very similar to this case both in the nature of the allegations at issue and the lack of supporting proof offered by the Plaintiff to the anti-SLAPP motion to dismiss.***

support his position.  Furthermore, Plaintiff's Response fails to meaningfully address any one of the number of defenses that exist in this case (e.g. truth, statements of opinion, privileged communications to law enforcement, privileged communications in the course of judicial proceedings, public figure protections).

As noted in the opening brief, it is not Christina's burden to negate Plaintiff's defamation case in the second prong of the anti-SLAPP analysis.  Rather, it is Plaintiff's burden to demonstrate, with competent evidence at this juncture of the case, that he has a probability of success on his claims.  Plaintiff's Response does not come close to satisfying this burden. Accordingly, the Court should conclude that Plaintiff cannot satisfy the second prong of the anti-SLAPP analysis.

## IV.   **CONCLUSION**

For the reasons stated herein, Defendant respectfully requests this Court to enter an order pursuant to NRS 41.660 granting its Special Motion to Dismiss and make an award of attorney's fees and costs allowed by the statute.

Dated this 22st day of May, 2020.

SANTORO WHITMIRE

*/s/ James E. Whitmire*
JAMES E. WHITMIRE, ESQ.
Nevada Bar No. 6533
SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
*Attorney for Defendant Christina Mamer*

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of May, 2020, I electronically filed the foregoing:

**DEFENDANT CHRISTINA MAMER'S REPLY TO PLAINTIFF'S RESPONSE TO SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660**, with the clerk of the Court, and served the following parties using the CM/ECF System:

Joshua Tomsheck, Esq.
HOFLAND & TOMSHECK
228 South 4th Street, 1st Floor
Las Vegas, Nevada 89101
JoshT@hoflandlaw.com
*Attorneys for Plaintiff*

/s/ James E. Whitmire
An employee of Santoro Whitmire

- 13 -